## Roy Sellars, Appellee, v. Peabody Coal Company, Appellant.

1. MINES AND MINERS—*duty of mine manager in permitting work under unsafe conditions.* The provision of the Mining Act, section 18, that the operator of a mine may permit a man to enter the mine, to work under the direction of the mine manager, even where unsafe conditions exist, means that the manager under such conditions shall be vigilant to care for the safety of men under his charge.

2. MINES AND MINERS—*when miner is not working in dangerous place under direction of mine manager.* Where a miner employed to clear away a fall from the roof of a mine complies with instructions of the mine manager to make the roof temporarily safe, by setting props around the edges of the fall, and another fall occurs three days later causing injury, the manager not having given any directions or visited the place during the interim, the miner is not working under the directions of the mine manager as required by the Mining Act, section 18.

3. MINES AND MINERS—*miner removing debris from ground is not making dangerous roof safe.* Where a fall from the roof of a mine has occurred, and the miner has complied with instructions to make the roof temporarily safe by setting props around the edges of the fall, he is not, in removing the coal and material constituting the fall, making a dangerous place safe, and is entitled to the protection of the Mining Act when another fall occurs.

4. MINES AND MINERS—*when wilful violation of statute as proximate cause of injury is for the jury.* Where a miner employed to clear away a fall obeys instructions from the mine manager to make the roof temporarily safe by props, and another fall causing injury occurs three days later without the manager having again visited the place or given directions, whether such wilful violation of the Mining Act, section 18, was the proximate cause of the injury is for the jury.

5. MINES AND MINERS—*when instruction is misleading.* An instruction that if a miner in clearing away debris where a fall had occurred was restoring the place to a safe working condition under the direction of the mine manager, and was an experienced miner knowing the danger of another fall, he could not recover, is misleading in involving the inapplicable doctrine of contributory negligence.

6. MINES AND MINERS—*when instruction improper in assuming facts.* An instruction that if a miner was employed to set timbers under a roof where a fall had occurred, and to clean up the fall for the purpose of making the place safe, and was directed by the mine manager to set the timbers and clean up the fall, and was injured by another fall in performing work under the direction of the mine manager, he could not recover, is improper, where the uncontradicted evidence shows he was employed to remove the debris from the fall, and that setting of the props was only for temporary protection and not for the purpose of making the roof permanently safe.

7. MINES AND MINERS—*instructions.* Where a fall from the roof of a mine has occurred, and a miner by direction has set props under the dangerous place and is employed to remove the debris, and the mine manager does not visit the place before another fall occurs three days later, an instruction that if the manager went with the miner and directed him to set the timbers and clean up the fall, to make the place safe, and the miner was injured while performing the work he was directed to do, he cannot recover, does not state the law correctly.

8. APPEALS AND ERRORS—*harmless error.* The improper admission of testimony of a physician concerning future results of injury not based upon existing conditions is not injurious where a verdict for $600.00 for injuries from which a miner suffered great pain, loss of work, and reduction of earning capacity, might properly have been for a greater amount.

Appeal from the Circuit Court of Williamson county; the Hon. WM. W. CLEMENS, Judge, presiding. Heard in this court at the March term, 1912. Affirmed. Opinion filed October 7, 1912.

DENISON & SPILLER, for appellant; MASTIN & SHERLOCK, of counsel.

HARTWELL & WHITE, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This suit was brought by appellee to recover dam-

ages for personal injuries received by him, while working in appellant's mine in Williamson county, Illinois, on February 23, 1909. The injuries were occasioned by a fall of slate from the roof in the room where appellee was working and the suit is based on the alleged wilful failure of appellant to comply with the provisions of sections 16 and 18 of the Mining Statute.

The declaration which contained five counts, charged that appellant wilfully failed to inspect said room for recent falls or other unsafe conditions on said day, and wilfully failed to make report of the condition of the mine at that time, in a book kept for that purpose, before appellee was permitted to enter the mine; that appellant wilfully permitted appellee to enter the mine to work on said day, not under the direction of the mine manager, before all conditions had been made safe; that appellant wilfully failed at said time to inspect said room and inscribe on the walls the date of the inspection, and place a conspicuous mark thereat as notice for all men to keep out; that it wilfully failed to see that all dangerous places were properly marked and danger signals displayed. Each count alleged that plaintiff was injured as a direct result of the violation of the statute therein referred to.

There was a verdict and a judgment in favor of appellee for $600.00. Appellant complains of the action of the trial court in refusing to peremptorily instruct the jury to find defendant not guilty, thereby raising the question as to whether the evidence was sufficient to establish appellee's case, and also states that the court erred in admitting improper evidence on behalf of appellee and in its rulings in regard to the instructions.

Appellee, as it appears from the proofs, on February 23, 1909, and for some time prior thereto, was employed as a coal miner in appellant's mine. Along the south side of the sixth west entry off the fourth south entry were certain rooms, among others Nos.

22, 23 and 24. Sometime prior to said date there had been large falls in rooms 22 and 23, which closed them so that they were abandoned. Afterwards a new room was turned off east of and nearly at right angles to room 24, which was called new room No. 22, and after it had been driven some distance, another room was turned off from it towards the south, known as new room No. 23. The tracks over which the coal was hauled along the entry were extended to the face of room 24, and a sidetrack led off, about half way down the latter room, to new rooms 22 and 23.

Appellee Roy Sellars and his brother Theodore were working in new rooms 22 and 23 and Monroe Russell was working in room 24. Several days prior to the time of the injury a fall of coal and slate from the roof thereof had occurred in the roadway in room 24 which covered up the track about at the point where the switch turned off to new rooms 22 and 23, so that coal could not be hauled out from any of said three rooms. When appellee, his brother and Russell went to work on February 18, 1909, they found the fall in room 24 and reported it to the mine manager, who said he would see about it the next day they worked. On the morning of February 20, at the bottom of the shaft, the manager made arrangements with them to clean it up, for which they were to receive the wages of one shift and pay for what coal there was in the fall. They then went to the fall which was about half a mile away when they discovered that another fall had occurred since they were last there. One of them went back for the mine manager, who came to the place and made a new contract with them to clean it up at a rate agreed upon per hour. The place in the roof, from which the fall came, was from twelve to fifteen feet across and after the fall there was exposed in the roof a "slippery" soapstone. The mine manager, who was the only witness on the part of appellant, testified that such a roof is liable to fall after the

top coal has come down without any warning, if not secured, and this fact was also testified to by witnesses for appellee. The manager told appellee and the two men working with him to set some props around the edges of the fall where the top coal was and also on the edge of the slate where it was broken, and marked the places where they were to be placed, which he said he knew would hold the roof temporarily. The props were set by the men around both sides of the fall, and along the edges thereof, as directed on February 20, and they worked there that day breaking up the coal and other material, constituting the fall, removing it from the track and shoveling it alongside towards the rib so the cars could pass. The next two days they did not work, but on the morning of the twenty-third they returned and continued clearing the track, until about 2:30 P. M. when a large mass, weighing several tons, suddenly fell from the place in the roof where the previous fall had occurred, killing appellee's brother Theodore and striking appellee upon the shoulder, thereby severely injuring him. At the time he was injured, appellee was earning, when the mine was running on average time, from four to six dollars a day. By reason of his injuries he was unable to labor for four months, and since that time he has been unable to work as a coal miner in the manner he did before, and has not received over $2.25 a day. He incurred physicians' bills to a small amount and testified that at the time of the trial, more than two years later, his shoulder was still hurting him. It is the contention of appellant that the trial court should have directed a verdict of not guilty because, (1) appellee was working under the direction of the mine manager when he was injured; (2) was engaged in making a dangerous place safe at the time he was injured; (3) the evidence does not tend to prove that the wilful violation of the statute was the proximate cause of the injury, and (4) appellee, while engaged

in the general work of making the place, where he was working, safe, was not within the class contemplated by the statute, for the protection of which the law was enacted.

Section 18 of the statute in reference to Mines and Miners provides that no one shall be allowed to enter the mine to work therein, except under the direction of the mine manager, until all conditions shall have been made safe.

We do not think the evidence in this case shows that appellee was working under the direction of the mine manager in such a way as to deprive him of the protection afforded by the statute. He, with the other two men, had been employed to clean up the fall and clear the tracks at the place in question by the manager and he had given them certain directions for protecting themselves, which they appear to have substantially followed. The fall which caused the injury, however, occurred three days later and in the meantime the men had not been given any directions by the manager or visited by him or any one for him nor had the place been examined, marked or reported by the mine examiner.

The provision in the statute that the operator of a mine may permit a man to enter the mine to work, under the direction of the mine manager, even where unsafe conditions exist, must be held to mean that the manager, under such conditions, will be vigilant to care for the safety of the men under his charge. In this case, however, while the instructions given by the manager were, as he himself asserts, only intended to make the place temporarily safe, and while the construction of the roof was such, as shown by the proofs, that dangerous changes might occur at almost any time, yet the manager gave no further attention to the place or the men, and three days later, dangerous changes having taken place, a fall occurred and appellee was injured. To hold that appellee was, at the

time of the injury, working under the direction of the mine manager would be to set at naught the provisions made by the statute for his safety. Nor were appellee and his companions, in our opinion, engaged at the time of his injury in making a dangerous place safe. All the evidence shows that they were engaged in removing the fall from the track and clearing the entry so that cars could pass over the track and the work of mining therein, and in new rooms 22 and 23, be proceeded with. The danger point was the roof above them and that they had no instructions to make safe, other than those originally given them by the mine manager for temporary purposes, which they had obeyed. Whether the wilful violation of the statute alleged was or was not the proximate cause of the injury received by appellee was a question of fact for the jury. The workmen at the place of the fall had no notice of danger other than that which they had attempted to provide against temporarily in accordance with the instructions of the mine manager, when they first went to work. It is certainly a reasonable inference that if the mine examiner had examined the roof at that point on the third day after they went to work he would have ascertained the danger and marked the place as required by law, and the workmen would have remained away from the point of danger. From what is above said it follows that the claim of appellant that appellee was not at the time of the injury entitled to the protection of the statute, for the reason he was engaged in the general work of making the place safe, is not well founded.

We are of opinion that under the proofs in the case, the court below did not err in refusing to instruct the jury to find appellant not guilty.

Appellant complains that over its objection, the court admitted the testimony of a physician concerning probable future results of his injury, which were said to be not based on conditions then existing. We are inclined to think the evidence was properly ad-

mitted, but at any rate its admission did not injure appellant's case as it could only have bearing upon the amount of the verdict, which in this case was even smaller than the other proofs in the case would have warranted. Complaint is also made by appellant, that several miners who were examined, as witnesses, were permitted to testify as experts that a roof, such as that above the place where appellee was working, was dangerous. This testimony might well have been rejected by the court, but the other evidence in the case showed that the place was dangerous beyond all doubt, and appellant itself insisted, as one of its defenses, that appellee was working under the direction of the mine manager in making a dangerous place safe. So the admission of the testimony did not constitute material error.

Appellant complains that sixteen of the instructions it offered were refused, and the refused instructions are discussed *seriatim*.

The first refused instruction told the jury that, if they believed from the evidence the work appellee was doing was part of the general work of cleaning up the fall and restoring the place where the fall had occurred to a safe working condition, and that appellee was doing such work under the direction of the mine manager, and was an experienced miner knowing the dangers to which he was exposed while doing such work, he could not recover. This instruction was misleading in that it appears to involve the question of contributory negligence on the part of appellee, which could not be involved in this case, and the same statement is applicable to refused instruction No. 16 which more directly invoked the doctrine of contributory negligence on the part of appellee.

Refused instruction No. 8 told the jury that if appellee was employed by the mine manager to set timbers under the roof, at or near the place where the fall had occurred, to clean up the fall for the purpose

of making the place safe, and that the manager went with appellee and directed him to set the timbers and clean up the fall to make the place safe, and that appellee was injured while performing the work he was directed by the mine manager to do, he could not recover for such injury.  The vice of this instruction is that it appears to assume that appellee was employed to set timbers, under the roof, and clean up the fall for the purpose of making the place safe, whereas the uncontradicted evidence showed that he was employed to clean up the entry so that the cars could pass over the tracks and the work of mining proceed, and that the setting of the timbers was only for temporary protection for them during the prosecution of the work, and not for the purpose of making the room permanently safe.  Also because the latter part of the instruction told the jury in effect that if the manager went with appellee, and gave him directions when he set him to work, and he was injured while performing that work by a fall which occurred three days later, he could not recover, which under the circumstances shown by the proofs, was not a correct statement of the law.

We have carefully examined appellant's other refused instructions, and have arrived at the conclusion that the court committed no reversible error in refusing to give them.

The instructions given for appellee were unnecessarily numerous and complicated, but while the court might well have refused some of them and thereby simplified the trial, and made the law governing the case easier of comprehension by the jury, yet we cannot say there was such error in giving them as would make necessary the reversal of a judgment in a case like this, where substantial justice appears to have been done.

The judgment of the court below will be affirmed.

*Affirmed.*